WILLIAM G. NIXON v. CYDON LODGE No. 5, KNIGHTS OF PYTHIAS, OF SALINA, KAN., *et al.*

No. 7947.

1. MECHANICS' LIENS—*Priority over Mortgages.* Where a mortgage loan upon real estate was negotiated before the commencement of a building thereon, but the papers were not executed, delivered, or recorded, and the loan was not closed up nor any money paid thereon, until after the excavation for the building was begun, the mechanics' liens for labor and material, duly preserved, are prior and paramount to the lien of the mortgage.

2. ———— *Statement, Fatally Defective.* A contract was made for the erection of a large building at a stipulated price; the contractors divided up and sublet to others the greater part of the work; before the completion of the building the contract was abandoned, and the original contractors filed a statement for a lien, and only three items were given, viz., the contract price, the total value and amount of material furnished and labor performed, and the money paid. *Held,* That the claim was not itemized as nearly as practicable, and that their statement was fatally defective.

3. ———— *Itemizing Subcontractor's Statement.* Where a subcontractor enters into a contract for the performance of certain work upon the building at a specified price, and the work is completed within the contract price, he need not, in filing a statement for a lien, separate and state the different elements which enter into his claim.

4. ———— *Subcontractors of Subcontractor.* The provisions of the mechanic's lien law do not extend to persons so remote as subcontractors of a subcontractor.

5. ———— *Enforcement.* The right to a mechanic's lien must be determined by the law in force at the time the right became vested, but the lien must be established or preserved and enforced by the law in force at the time the necessary proceedings are had for that purpose.

6. ———— *Rights of Subcontractors.* Subcontractors are bound to take notice of the original contract, and they cannot obtain liens in excess of the amount which the owner contracts to pay, but their rights will not be affected by any subsequent agreement between the owner and the original contractor to which they have not assented, or by any act of waiver of the original contractor.

*Error from Saline District Court.*

ACTION by William G. Nixon against Cydon Lodge No. 5, Knights of Pythias, of Salina, and others, to foreclose a mortgage. There was a judgment of foreclosure, and from that part thereof declaring the mortgage subject to mechanics' liens plaintiff brings error. The material facts are fully stated in the opinion herein, filed January 11, 1896.

*Rossington, Smith & Dallas,* and *Clifford Histed,* for plaintiff in error.

*Bond & Osborn,* for defendants in error Rutledge Bros., August Nelson & Co., and the C. & S. A. I. & F. Co.; *Owen A. Bassett,* and *Sam. Kimble,* of counsel.

The opinion of the court was delivered by

JOHNSTON, J.: Early in the year of 1888, Cydon Lodge No. 5, Knights of Pythias, of Salina, Kan., determined to erect a building upon real estate which it owned in Salina. To accomplish its purpose it was necessary to procure a loan upon the property. During the month of June, 1888, it applied to the Kansas Loan and Trust Company, of Topeka, for a loan of $20,000. While the application was pending, and before any loan was secured, the lodge procured plans and specifications for the building. During the month of August, 1888, the Kansas Loan and Trust Company notified the lodge that it had a customer who would make a loan of $20,000 to the lodge for the purpose of erecting the building. Immediately after this information was received the lodge advertised for bids for the construction of the building, and on August 27, 1888, the contract was let to Rutledge Bros., who entered into an agreement to furnish the material and

construct the building for $28,800. On September
28, 1888, the contract was slightly modified as to the
time when payments were to be made, so as to corre-
spond with the advanced payments to be made to the
lodge under the $20,000 loan by Nixon, which appears
to have been closed up and completed about that time.
The papers pertaining to the loan were prepared some
time in advance of the completion of the same. It
appears that the Nixon mortgage, as well as the
commission mortgage of the Kansas Loan and Trust
Company, were filed for record in Saline county on
September 14, 1888. Accompanying the mortgage
was a written guaranty, signed by a number of indi-
viduals who were interested in the enterprise, includ-
ing Rutledge Bros., promising prompt payment of the
principal and interest of the loan, as well as the
taxes and insurance upon the property. At the same
time the lodge also executed an instrument designated
as a guaranty against liens, in consideration that the
loan negotiated for should be accepted. It guaranteed
the party making the loan against any expense, cost,
or loss by reason of any mechanics' liens which might
be filed on the premises, and it also stipulated that
the loan should be paid in certain installments as the
work upon the building advanced. These papers, in-
cluding the mortgages, appear to have been dated
September 1, 1888, while as a matter of fact they were
not executed until later, and the loan was not finally
completed and closed up until September 28, 1888.
At the last-mentioned date several material changes
were made in respect to the times of payment, and all
the papers connected with the loan were forwarded
to Nixon, who lived near Philadelphia, Pa., and on
October 4, 1888, he deposited with the Kansas Loan
and Trust Company the sum of $20,000, to be paid to

the lodge in installments as had been agreed upon. Rutledge Bros. began work upon the building, as the court has found, on August 31, 1888, and they sublet various parts of their contract to others. The work proceeded, and from time to time Nixon advanced various installments upon the loan until they amounted to the sum of $11,600. The lodge became insolvent, and was unable to complete the building or to pay the contractors, and no more than $11,600 was ever advanced by Nixon upon the loan. A proceeding was begun by Nixon to foreclose his mortgage, in which a receiver was appointed, and on October 23, 1889, the receiver notified the contractors that they must do no more work upon the building, and the last work done thereon was upon that day. Soon afterward the contractors, subcontractors and others filed verified statements with a view of enforcing liens against the property, and they have been made defendants in the foreclosure proceedings. The trial court determined that the mortgage incumbrances were second and subordinate to the liens of the claimants, and to review this ruling complaint is made.

The questions which divided the parties are whether the claims of those who furnished labor and materials for the building are valid liens against the property, and if so whether they are prior and superior to the incumbrances of the mortgages. If the mechanics' liens of the claimants are valid, they relate back to the commencement of the building. It is contended that, as the negotiations for the mortgage had been made before the building was commenced, the lien of the mortgage is paramount to those claimed for the labor and materials. It will be observed that the building was not to be erected from the loan merely, as·the contract price of the same greatly exceeded the

amount of the loan. The mere negotiation for the loan did not create a lien, and certainly there was no incumbrance upon the property until the mortgage had been executed. As we have seen, the contract was entered into on August 27, 1888, and work was commenced on August 31, 1888, while the papers representing the loan were not executed until September 14, 1888, and appear not to have been delivered or accepted until September 28, 1888. Some controversy has arisen as to when the building was commenced. The first labor done upon the ground under the contract was the removal of an old building, and the clearing of the ground for the excavation. This formed a part of the work under the contract, and was necessary for the construction of the building. Whether this was sufficient to constitute a commencement under the statute we need not determine, for it is conceded that the excavation was begun between the 5th and 10th of September, and that was prior to the time when the incumbrance of the mortgage attached to the property.

1. Mechanics' liens— priority over mortgages.

It is contended that the statement for a lien filed by Rutledge Bros. is fatally defective because it is not itemized as the law required. It is as follows:

"ITEMS:
"To contract price as per agreement........ $28,800 00
"Value and amount of material furnished and
  labor performed up to the abandonment of
  contract and building by the owner....... $23,523 60
"By cash paid.................... ...... 12,423 17
  "Balance............................... $11,100 43"

As will be seen, this is no more than a lumping of the items included in the whole contract price, another including the estimated value and amount of material furnished and labor performed, and another giving a

credit for the amount which had been paid. It can
hardly be regarded as a compliance with
the statute, which requires that the state-
ment shall include the items of the amount
claimed as nearly as practicable. If the building had
been completed according to contract and within the
contract price, the items might not have been so im-
portant; but, as has been seen, the building was in-
complete, and no one can tell what proportion of the
work has been done, or the amount or value of labor
and material necessary to its completion. That it was
not itemized as nearly as practicable is readily seen,
since they do not separate the labor from the materials,
they do not give the amount of the subcontracts, nor do
they separate the amounts expended for excavation, for
stone, for brick, for iron, for terra-cotta, and for wood,
and the labor upon each, as might have been done.
From the record, it appears that the work was largely
divided up and sublet to others, and a detailed state-
ment to that extent was practicable and might have
been readily made. The filing of a statement is the
initial, and one of the most important, steps in estab-
lishing a mechanic's lien. A substantial compliance
with this provision has always been regarded as es-
sential, and an observance of the same is necessary
for the protection of owners, purchasers, and other lien
creditors. From the record, it appears that it was
practicable to itemize the claim of Rutledge Bros., and
it was absolutely necessary for the protection of others.
They have in fact filed no itemized statement, and un-
der the rule which obtains in this state they are not
entitled to a lien upon the property. (*Martin v. Burns,*
54 Kan. 641, and cases cited.)

The same objection is made against the statement
filed by August Nelson & Co. Their work was done

2. Statement,
fatally de-
fective.

under a contract, and was substantially completed before work upon the building was suspended.   The materials which they furnished and the work which they did came within the contract price, and there was no necessity for them to separate and state the different elements which entered into their claim.

3. Itemizing subcontractor's statement.

Ulrich Bros. entered into a contract with one of the subcontractors to furnish certain stone to be used in the erection of the building, and they have filed a statement and are attempting to enforce their lien for the unpaid balance due upon the contract.   Do the provisions of the law extend to persons so remote as subcontractors of subcontractors, or are they limited to those who furnish material or perform labor under a subcontract with the original contractor?   It is urged that under the rule of liberal construction subcontractors in the second or successive degree may be included.   As mechanics' liens are purely statutory, their operation and extent must be found within the terms of the statute creating and defining them.   As the statutes confer special privileges upon one class of persons over others, it must clearly appear that those claiming the benefits of the statute are within its provisions.   The law is entitled to a liberal interpretation in its application to all persons or classes who are within the protection of the statute, but this rule cannot be invoked to confer the special privileges and preferences of the law upon those not definitely included by the statute.   From a reference to the statute, it will readily appear that the person intended to be described by the term "subcontractor" is the one who directly contracts with the original contractor. So much of the provision as is pertinent to this question is as follows:

"Any person who shall furnish any such material

or perform such labor under a subcontract *with the contractor*, or as an artisan or day laborer in the employ of such contractor, may obtain a lien upon such land," etc. (Civil Code, § 632.)

The legislature having expressly limited the lien of a subcontractor to those who contract with the original

4. Subcontractors of subcontractor.

contractor, we cannot by arbitrary interpretation extend it so as to include subcontractors of the second, third or fourth degree. If it may be extended beyond those who contract with the contractor, it would seem that it might be extended indefinitely to successive subcontractors. This rule would be hazardous to the owner, oppressive to the contractor, and impracticable in its operation. Such an interpretation should not be adopted except where the statute plainly and positively requires it. No such provision is found in our statute, and, however equitably it might operate in some cases, we cannot by judicial interpretation engraft such a feature upon it. (*Kirby v. McGarry*, 16 Wis. 70; *Harbeck v. Southwell*, 18 id. 439; *Rothgerber v. Dupuy*, 64 Ill. 454; *Bridge Co. v. Railway Co.*, 72 id. 506; *Schaar v. Ice Co.*, 37 N. E. Rep. 54; *Trust Co. v. Railroad Co.*, 54 Fed. Rep. 723; *Stone Co. v. Board of Publication*, 91 Tenn. 200; *Lowenstein v. Reynolds*, 22 S. W. Rep. 210; *Monroe v. Hannon*, 3 L. R. A. 549; Phil. Mech. Liens, § 49.)

It is contended that the claims of some of the subcontractors must fail because they did not serve a copy of their lien statements upon the owner. That was a requirement of the old law, but the later enactment provides that the service of a notice in writing of the filing of such lien upon the owner of the land is sufficient. (Gen. Stat. 1889, ¶ 4735.) The vesting of the lien is one thing and the manner of its enforce-

20—56 KAS.

ment is another. "The right to a mechanic's lien

**5. Enforcement.** must be determined by the law in force at the time the right becomes vested, but the lien must be established, or preserved and enforced, by the law in force at the time the necessary proceedings are had for that purpose." (*Groesbeck v. Barger,* 1 Kan. App. 61, 63, 41 Pac. Rep. 204.) In the cited case, Garver, J., points out clearly that the proceedings for enforcing the lien are mere remedies which may be changed by statute, and are governed by the law in force when the proceedings are had. So, here, the right to the liens is governed by the law of 1872, and relates back to the commencement of the building, while the notices and other steps taken to preserve the liens are governed by the act of 1889.

It is contended that by guaranteeing the payment of the mortgage debt and by their knowledge that a loan had been negotiated, Rutledge Bros. have waived their right to claim the lien. In view of the fact that their lien was not properly preserved this is no longer a matter of consequence to them. The claim is made, however, that it will operate to defeat the liens of the subcontractors. It is doubtful whether anything done or known by Rutledge Bros. would have estopped them from claiming a lien prior and superior to that of the mortgage, but in no event could it have operated to the prejudice of the subcontractors. Their right rests upon the statute rather than upon any privity between them and the owner. They are given a direct lien, and the only limit is that they cannot obtain liens in excess of the amount contracted to be paid for the work. The contract of Rutledge Bros. did not require them to construct and deliver the building to the owner free from liens, and no subsequent contract or action of the original

contractors can affect the rights of the subcontractors.

6. Rights of subcontractors.

They were bound to take notice of the original contract, and could not secure liens in excess of the sum which the owner agreed to pay ; but those who have in good faith furnished labor and material upon the faith of the original contract will not be affected by any subsequent agreement or act of waiver.

For the reasons mentioned, the judgment must be modified so far as it awards liens to Rutledge Bros. and to Ulrich Bros. ; but we find no prejudicial error in any other respect.   When the judgment is so modified, it will stand affirmed.

All the Justices concurring.