HANNIBAL RANKIN, *Appellee,* .v. ROBERT RANKIN *et al.*
(THE MONARCH PORTLAND CEMENT COMPANY, *Appellant*).

No. 17,556.

SYLLABUS BY THE COURT.

1. MECHANIC'S LIEN—*Statement—Subcontractor—Laborer.* The
lien of a subcontractor or of an artisan or laborer employed
by a contractor can not be defeated because of payments
made by the owner to the contractor within the time fixed by
statute for the filing of a statement for a lien by the sub-
contractor, artisan, or laborer, nor is it material that such
claimant fails to state the amount due from the owner to the
contractor at the time the lien is claimed.

2. ———— *Same.* Nor will the lien of one who performed labor
for a contractor at. an agreed compensation per day be de-
feated by the fact that in his statement he also designated
himself as a subcontractor and stated that his work was done
under a subcontract.

3. ———— *Same.* The fact that both designations were used in
the statement for lien and in the petition of claimant could
not have misled the defendant to his prejudice, nor did it
afford ground for the contention that there was a material
variance between the pleadings and the proof.

Appeal from Allen district court. Opinion filed April
6, 1912. Affirmed.

*Frederick G. Apt,* and *Charles H. Apt,* for the ap-
pellant.

*La Verne Orton,* and *N. E. McNeill,* for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought to re-
cover $178 and to foreclose a mechanic's lien. De-
fendant Robert Rankin and the appellee, Hannibal
Rankin, are father and son. Both were plasterers by
trade and they worked together. About April 7, 1909,.
Robert Rankin entered into an agreement with the
Monarch Portland Cement Company to do plastering
upon the buildings at the cement plant. The price was.

agreed upon, and as the work proceeded payments were made from time to time to Robert Rankin, and at the date of discharge, September 2, 1909, he was paid in full for all work done. During this time Hannibal Rankin, the appellee, worked with his father and some of the checks given by the cement company to Robert Rankin in payment for work done were delivered to and indorsed by Hannibal. At the time the work was being done Hannibal lived with his father. Robert Rankin stated that he had paid Hannibal $9.50 at one time and $26.50 at another, and Hannibal testified that he had received a number of checks drawn to his father and that he had indorsed his father's name thereon, who could not write, for the purpose of getting them cashed.

On October 11, 1909, Hannibal Rankin filed a mechanic's lien and served proper notice. The action was begun November 5, 1909, praying judgment against both Robert Rankin and the cement company and for a foreclosure of the alleged mechanic's lien. The answer contained a denial and a plea of payment on the part of the cement company. Robert Rankin did not answer or otherwise contest. At a trial which was had without a jury appellant made an objection to the introduction of any evidence on the ground that the petition did not state a cause of action, but it was overruled, and a demurrer to appellee's testimony was also overruled. The court rendered judgment finding that Robert Rankin owed Hannibal Rankin $174 and foreclosing the mechanic's lien, from which judgment this appeal is taken.

The point first made, that there was no allegation in the petition of a contract between the company and the original contractor, is not good. It is expressly alleged that the contractor entered into an agreement with the company to plaster its buildings at twenty cents per square yard for outside work and ten cents per square yard for inside work, and that the con

tractor continued to work under the agreement to a
stated time. The failure to state that a certain sum
was due to the contractor from the company when the
work ceased is not material. A subcontractor or
laborer is given a direct lien. His right rests upon the
statute rather than on a relation of privity with the
owner, and it is not lost by the fact that payments have
been made by the owner to the contractor. The only
limit in that respect is that claimants can not obtain
liens in excess of the price fixed in the ·contract with
the owner. (Civ. Code, § 651; *Nixon v. Cydon Lodge*,
56 Kan. 298, 43 Pac. 236; *Fossett v. Lumber Co.*, 76
Kan. 428, 92 Pac. 833.) Appellee specifically alleged
that under an agreement with the contractor he had
worked sixty days on the company's buildings at the
rate of $3.50 per day, thereby earning $210, on which
he had received payments amounting to $36, leaving a
balance of $174 due him from the contractor. A lien
was filed in due time, and the owner can not escape
liability to appellee by the fact that he may have al-
ready paid the contractor for the improvements. There
was no real controversy but what the lien claimed by
appellee was less than the amount due the contractor
for the entire work done under the contract with the
owner. Although criticized, the lien and accompany-
ing notice which were served on the company are in
substantial compliance with the requirements of the
statute. In the statement and petition appellee desig-
nates himself as a laborer and subcontractor, and he
appears to have used the designations interchangeably
in both documents. It is stated that the labor was per-
formed under a subcontract with the contractor,
naming the owner and contractor, the date when the
last labor was performed on the contract, the times
when appellee did the work and the compensation he
was to receive, and included in this itemized statement
was the amount he had already received from the con-
tractor and the amount due from him. These recitals,

as well as a complete description of the real estate upon which the lien was claimed, were duly verified. The notice of the lien was served, and attached to it was a copy of the statement filed which fully acquainted the company with the claim for a lien.

But it is contended that appellee did not show definitely the class to which he belonged—did not show clearly by his petition or lien whether he was claiming as a laborer or as a subcontractor. There is no room for doubt as to his relation to the owner and contractor or his right in the premises. He stated that he performed labor under a contract with the contractor. His was a claim for labor furnished to a contractor and is therefore a labor lien. Although having been furnished under a contract it is in a sense a subcontract. Strictly speaking, a subcontractor is one who takes from the contractor a specified part of the work, but a day laborer who works under an agreement with the contractor is in one view a subcontractor. The statute provides that "any person who shall furnish any such material or perform such labor under a subcontract with the contractor, or as an artisan or day laborer in the employ of such contractor, may obtain a lien upon such land," etc. (Civ. Code, § 651; see, also, *Nixon v. Cydon Lodge*, 56 Kan. 298, 43 Pac. 236.) Whatever may be the proper classification of the appellee, it is clear that no one could have been misled by his statements in either the lien or the petition. In both he alleged that he performed labor by the day under a contract with the contractor, and if he had followed this statement with another that he claimed a lien as a subcontractor it would not have impaired the validity of the lien, and proof that he worked for the contractor as an artisan or day laborer could not have been regarded as a variance. Whether regarded as one or the other the proof would necessarily be the same, and, besides, no variance is to be deemed material

Electric Co. v. Brown.

unless it has actually misled the opposing party to his prejudice.   (Civ. Code, § 134.)

A question is raised as to the age of appellee when the work was done, but the evidence, although somewhat obscure, is sufficient to uphold the finding included in the general verdict that he had reached majority when the services were performed and was entitled to recover compensation for them.

The judgment is affirmed.