No. 30,916.

THE LINDAS LUMBER COMPANY, *Appellant,* v. FRANK DRENNAN and MARY DRENNAN, *Appellees.*

(18 P. 2d 179.)

Opinion filed January 28, 1933.

*Russell L. Hazzard,* of Dodge City, for the appellant.

*W. C. Gould* and *George R. Gould,* both of Dodge City, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one by a lumber company which furnished material to a contractor to build a house on a city lot, for judgment against the owner of the lot for foreclosure of a mechanic's lien. The judgment subjected the lot to a lien for a portion only of the price of the material furnished by the lumber company to the contractor, and the lumber company appeals.

Frank Drennan was the lot owner. H. J. Reed was the contractor. Drennan and Reed consulted lumber dealers to obtain figures to be used as a basis for a contract to build the house. The Lindas Lumber Company made a price of $2,825. The next day Drennan and Reed entered into a written contract whereby Reed agreed to furnish the labor and material to build the house for a stated sum. Reed testified he then entered into a contract with the lumber company that the lumber company should furnish the material. The lumber company furnished material to Reed to the amount of $3,-057.65. Drennan paid a bill for paint amounting to $73.90. Drennan contended he owed for material the sum of $2,825, less the

paint bill, or $2,751.10. Drennan tendered that sum to the lumber company, but the tender was refused. The lumber company perfected a mechanic's lien for $3,057.65. In the action to foreclose the mechanic's lien, the judgment fixed the amount of the lien at $2,751.10. The lumber company also sued Reed, and a judgment was rendered against him for $3,057.65, the correctness of which is not disputed.

There was testimony that in the first instance the lumber company made a price to Drennan, and Reed told the lumber company's manager the price would have to be reduced. Montgomery-Ward had the plans and specifications for the building and was figuring on prices. Drennan procured return of the plans, and the lumber company made a discount of a little more than eight per cent from the regular price, to meet competition. Drennan testified that the lumber company's manager agreed with him to furnish all the material necessary to build the house for $2,825, and Drennan agreed with the lumber company to purchase the material from the lumber company for that sum. A jury called to aid the court returned the following special finding of fact:

"Q. Did the plaintiff, by its agent, J. A. Sealey, agree to furnish to the defendant, Frank Drennan, all of the material necessary for the construction of the house at 1701 Second avenue, for the agreed sum of $2,825? A. Yes."

The lumber company objected to the testimony establishing the oral contract between its manager and Drennan, and moved for judgment notwithstanding the finding of fact.

The lumber company contends the testimony establishing the oral contract, whereby the lumber company agreed to sell and Drennan agreed to buy the lumber for the house for $2,825, contradicted the written contract between Drennan and Reed. It was not necessary that the contract between the lumber company and Drennan should be in writing to be effective. It was of equal grade and potency with the written contract between Drennan and Reed. That contract was a perfectly proper one for Drennan to take, and it was not essential that the two contracts should coincide. The lumber company was not a party to the written contract, and it was not made for the benefit of the lumber company. Whatever its terms it did not change the price for which, as between the lumber company and Drennan, the lumber company was to furnish the material necessary to build the house.

The lumber company contends the contract between Drennan and Reed constituted Reed Drennan's agent to buy material to build the house, and Drennan is liable to the lumber company for the act of his agent. Some authorities are cited in which it is said the contractor is the owner's agent to purchase material of a subcontractor, but that is not true in this state.

The statute provides that one who, under contract with the owner of land, or under contract with the owner's agent, furnishes material for the construction of· a building on the land may have a lien. (R. S. 60-1401.) The agent referred to is one who has authority from the owner to act in the owner's stead in dealing with the contractor. The statute then provides that one who furnishes material to the contractor to fulfill his contract with the owner may have a lien to the same extent as the contractor himself. (R. S. 60-1403.) The parties here are contractor and subcontractor, and the relation between them is not founded on any relation of principal and agent between owner and contractor. The subcontractor simply gets a statutory lien because he furnished material to the contractor which went into construction of the improvement.

"Their right [the right of subcontractors] rests upon the statute rather than upon any privity between them and the owner. They are given a direct lien, and the only limit is that they cannot obtain liens in excess of the amount contracted to be paid for the work." (*Nixon v. Cydon Lodge,* 56 Kan. 298, 306, 43 Pac. 236.)

The lumber company contends that by entering into the contract with Reed, Drennan abandoned his contract with the lumber company. Abandonment as thus invoked is generally understood to mean the voluntary relinquishment of a known right or privilege. The essence of it is intention to abandon. Intention may be inferred from circumstances. The question is one of fact, and not of law, unless the evidence warrants no inference except abandonment.

In this instance a lot owner desired to build a house. He consulted materialmen, who figured on the plans and specifications. The lumber company agreed with him to furnish all the material for a stated sum, and the owner agreed to buy the material of the lumber company for that sum. The next day the owner let a contract to a contractor, who agreed to furnish both labor and material to build the house for a stated sum. How much of the price represented labor, and how much represented material, was not specified. The contractor purchased his material from the lumber

company, which agreed with him to supply the material. Do these facts indicate beyond all doubt that the owner abandoned his agreement with the lumber company that the material for his house should cost him just so much? The district court held otherwise. The judgment necessarily includes a finding against abandonment, and the finding is approved. A finding the other way would not have been supported by evidence.

The lumber company contends that by entering into the written contract with Reed, Drennan caused the lumber company to change its position to its detriment. There was no testimony that the lumber company even knew of the contract between Drennan and Reed, much less that because of such contract the lumber company contracted with Reed to furnish whatever Reed should order at such prices as the lumber company might charge. Reed merely said that after he contracted with Drennan, he contracted with the lumber company for the lumber company to supply the material to build the house. The lumber company produced no testimony on this subject. It was perfectly proper that Reed should have a contract with the lumber company, but whatever the terms, Drennan was not a party to it, and there was no evidence that Drennan even knew about it. The result is that, while the contract between the lumber company and Reed might bind Reed to pay for all the material he ordered, there was no evidence to sustain estoppel of Drennan to insist on his contract with the lumber company. Indeed, the "estoppel" shoe is on the other foot. The lumber company was precluded by its contract with Drennan from binding Drennan's lot by a lien for the material furnished greater in amount than that stipulated in the contract.

The judgment of the district court is affirmed.

THIELE, J., not participating.