Shellabarger & Leidigh v. Thayer.

| 15 | 619 |
|----|-----|
| 45 | 180 |

| 15 | 619 |
|----|-----|
| 76 | 435 |
| c76 | 438 |
| c76 | 442 |

SHELLABARGER & LEIDIGH v. ISAAC THAYER, et al.

1. MECHANIC'S LIEN; *Lien of Sub-Contractor.* Under the lien law of 1872 the lien of the sub-contractor is limited only by the amount contracted to be paid the contractor; and all payments made to the contractor prior to the expiration of sixty days after the completion of the building, are at the risk of the owner, and cannot be taken in reduction of the lien of the sub-contractor.

2. ———— Thus, where T. entered into a contract with L., by which the latter agreed to build a house upon the lot of the former for $1,300 — $800 of which was paid on the execution of the contract, and the balance was to be paid after the completion of the building — and thereupon L. proceeded to perform his contract, and build the house, and in so doing bought lumber and material of S. to the amount of about $900, for which he did not pay, *held*, that S. was entitled to a lien for the full amount of his bill.

3. ATTORNEY FEE; *Contract.* An attorney's fee is not taxable on the foreclosure of any lien, unless in pursuance of a contract therefor.

*Error from Sedgwick District Court.*

SHELLABARGER & LEIDIGH, plaintiffs, claimed a sub-contractors' lien upon Lot No. 68 on Main street, in the city of Wichita, owned by *Isaac Thayer* and *George Skipton,* two of the defendants, for lumber sold to one H. H. Lindsay, to be used in the construction of a building which Lindsay had contracted with said *Thayer & Skipton* to erect on said lot. Lindsay died after the completion of the building, and his administrator was made a co-defendant. The district court, at the September Term 1874, found due plaintiffs, from Lindsay's estate, on account of said lumber, $918.74 and interest thereon, and $75 attorney fees, but held that their right to a lien, as against the owners of the lot, *Thayer & Skipton,* was limited to the amount which *T. & S.* owed *Lindsay,* to-wit, $500 and interest. Decrée accordingly — and plaintiffs appeal, and bring the case here.

*Sluss & Dyer,* for plaintiffs:

Does a payment made by the owner to the original contractor, at the time of the making of the contract, and before the commencement of the building, operate to defeat to that extent the lien of a sub-contractor? Are sub-contractors entitled to a lien upon the building and real estate to a sum equal to the *original contract-price,* or only to a sum equal to what was owing to the original contractor by the owner at the time the sub-contractor commenced furnishing the material? We think the only reasonable construction that can be placed upon § 2, ch. 141, Laws of 1872, is, that sub-contractors are entitled to a lien for the full amount of their claim not exceeding the amount for which the original contractor agreed to perform the labor and furnish the material; and that it makes no difference whether the owner paid a part or the whole of the contract-price at the time of the execution of the contract. Otherwise, the owner and contractor would have it in their power to wholly defeat any and all liens of

sub-contractors, and thus avoid the statute. We cannot express it in any stronger language than that of the statute: "But the risk of all payments made to the original contractor shall be upon *the owner* until the expiration of the 60 days hereinbefore specified." Nor is this unjust, for the same section provides that no owner shall be liable to an action by the contractor until the expiration of 60 days from the "completion of the building." (See also §§ 632 and 633 of the code, 1868, and §§ 23 and 24, ch. 87 of the laws of 1870, and § 2, ch. 97, laws of 1871.)

As to constitutional questions raised by defendant in error, see Cooley on Constitutional Limitations, 168, 171, 151; 13 Mich. 497; 21 Mich. 236; 28 Ind. 382.

*Wm. Baldwin,* for defendants in error:

1. Where the immediate contract between the owner and builder provides for a different security, (as in this case, where a note and mortgage were given,) it is entirely inconsistent with the idea of a mechanic's lien on the same land to secure the debt contracted for the building. (See *Burrough v. Baughman,* 9 Mich. 213.) In such case the original contractor could not have a mechanic's lien; and as § 2 of ch. 141, laws of 1872, merely extends the rights of the contractor to the sub-contractor, the sub-contractor could have none. But suppose a mechanic's lien could legally attach in this case: then, by the provisions of said § 2, the sub-contractor is to have a lien for the amount due him, on the property of the "owner" "from the same time and to the same extent, and in the same manner and to the same extent," as his original contractor would have. Now by § 1 of the same statute, a lien only to the extent of the amount due from the "owner" to the original contractor, on 11th of July 1872, (the day on which the plaintiffs first had any connection with the transactions in relation to said building,) could have been created or obtained, viz., for the sum of $500, and no more; consequently, the lien of the sub-contractors would, by the

plain terms of the statute, be restricted to that amount. That part of the statute providing that payments made by the owner to the contractor shall be "at the risk of the owner," and that part providing that "contractor shall not sue owner until," etc., cannot, it would seem, be made to apply in this case, to any part of the contract-price of the building except the $500 remaining unpaid on said 11th July 1872. Any other construction of the language of the statute, would place it in the power of the contractor, by mere silent collusion with a "stranger," to incumber the property of the owner, without his knowledge, and in fraud of his rights. The legislature cannot be presumed to have intended said statute to have any such effect. The record does not show that the defendant in error ever knew of any claim of plaintiffs against said real estate, as the sub-contractor of Lindsay, until the 23d day of August 1872, after said building was completed. As said § 2, ch. 141, laws of 1872, provides that the owner may pay the demand of the sub-contractor, and have it held a payment of such amount to the contractor, it would seem that the legislature contemplated that the right of lien of the sub-contractor could not be for a greater amount than was owing from the owner to the principal contractor under their contract, and that a sub-contractor's lien should not attach, until the "owner" had notice of his relation to the principal contractor.

2. If the construction of said § 2 contended for in behalf of the plaintiffs is the correct construction, then it is an infraction of § 16, article 2 of the constitution, as giving the statute a broader effect than that indicated by its title, and in so far as it does this, it is void. (See Cooley's Con. Lim., ch. 6, § 5, p. 148.) And if that be "the only reasonable construction," then it is manifestly inequitable and unjust, in that it renders it necessary that all building contracts shall be made on time, and for a money-consideration only, thus tending to prevent the improvement of real estate, the encouragement of which is the origin and object of the mechanic's-lien laws; and as

being unequal legislation, for the benefit of one class, and to the detriment of another equally entitled to the protection of the laws.

The opinion of the court was delivered by

BREWER, J.: The facts in this case are briefly these: On June 28th 1872, the defendants in error contracted with one H. H. Lindsay for the building of a house on a lot belonging to them in the town of Wichita. The contract-price was $1,300 — $800 of which was paid at the execution of the contract, and before the commencement of the work. Lindsay completed his contract. The plaintiffs in error sold Lindsay lumber for the building to the amount of about $900. Having taken the proper steps to perfect their lien, the question is, whether it extends to the full amount of their bill, or simply to the amount due the contractor. It is not pretended that Lindsay received any money from the defendants after the plaintiffs had commenced furnishing lumber, or indeed after the commencement of the building — the only payment being the $800. The law in force at the time of this building, (the law of 1872, ch. 141, p. 294, § 2,) giving to sub-contractors their lien, requires the filing of the statement within sixty days after the completion of the building, etc., and then reads:

"And if the contractor does not pay such person or sub-contractor for the same, such sub-contractor or person shall have a lien for the amount due for such labor or material, on such lot or lots from the same time, and to the same extent, and in the same manner and to the same extent, as such original contractor: *Provided,* That the owner shall not be liable to such sub-contractor for any greater amount than he contracted to pay the original contractor; but the risk of all payments made to the original contractor shall be upon the owner until the expiration of the sixty days hereinbefore specified; and no owner shall be liable to an action by the contractor until the expiration of said sixty days," etc.

Three things are clear from this: First, that the sub-contractor has a lien for his work or material; second, that the limit of such lien is the amount contracted to be paid to the

original contractor; and third, that the risk of all payments up to a certain date is upon the owner. Now the money contracted to be paid in this case was $1,300. That then is the limit of the sub-contractor's lien. Not the amount due at the time of notice, or delivery of material, but the amount contracted to be paid. True, the owners had paid $800 of that amount, but the risk of such payment was upon them. The very purpose of this clause in the statute, was to prevent the cutting off of the liens of sub-contractors by early payments to the contractor. And this is a clause, the exact counterpart of which we have not found in the statutes of any other state. In most, the lien applies only to the amount due at the time of notice. Such also, until 1872, was our own law. Laws of 1871, p. 253, § 2; Gen. Stat., p. 756, § 632.

It must be borne in mind that this is not an attempt to compel payment by the lot-owners before the time fixed by the contract therefor, for though the contract called for note and mortgage for the five hundred dollars, yet the answer admits that amount to be due; nor to compel payment in money, when payment in some other commodity was stipulated for. Payment was contracted for in money; and the only question is, whether by advance payment the lien of the sub-contractor can be cut off. The plain letter of the statute forbids it. We do not think the law obnoxious to the constitutional objections raised against it.

We do not understand that the attorney's fees can be taxed in a case like this. *Stover v. Johnnycake*, 9 Kas. 369.

The judgment of the district court will be modified, and the case remanded with instructions to adjudge the entire amount found due the plaintiffs in error (less the attorney's fees) a lien upon the premises.

All the Justices concurring.