WRIGHT, Respondent, vs. POHLS and wife, imp., Appellants.

*November 16 — December 6, 1892.*

*Lien of subcontractor.*

Sec. 3315, R. S., as amended by ch. 312, Laws of 1885. and ch. 535, Laws of 1887, giving liens to subcontractors on lands, buildings, etc., provided that "in no case shall the owner be compelled to pay a greater sum for or on account of such house, building, or other improvement than the price or sum stipulated in the original contract." *Held*, that in case of partial nonperformance of their contract by the principal contractors, the term "the price or sum stipulated in the original contract" meant the proportionate contract price or sum for the part performed, and the lien of the subcontractor was limited to the unpaid balance of that sum.

APPEAL from the Circuit Court for *Milwaukee* County. About June 4, 1888, defendants Opperman & Baalke contracted to build a house for defendant *Henry Pohls*, for

$1,250. They proceeded with the execution of their contract, but before it was completed, and before August 6, 1888, abandoned it. Before such abandonment, defendant *Henry Pohls* paid Opperman & Baalke $700 on the contract, and it necessarily cost him more than $550 to complete the house according to the contract.

Before August 6, 1888, plaintiff sold and delivered to Opperman & Baalke lumber and material used in the construction of the house, of the value of nearly $550. No payment was made on account thereof.

On August 6, 1888, plaintiff served on defendant *Henry Pohls* the notice required by sec. 3315, R. S., and the acts amendatory thereof, to the effect that he claimed a lien on the house and premises for the amount of his demand against the principal contractors.

This action was brought to enforce such lien. On the above facts the circuit court gave judgment for plaintiff, enforcing the lien claimed. Defendants *Henry Pohls* and wife appeal from the judgment.

For the appellants there was a brief by *Fiebing & Killilea*, and oral argument by *H. J. Killilea*.

*J. E. Wildish*, for the respondent.

LYON, C. J. This case is ruled by the statutes in force in 1888, giving liens to subcontractors and other employees on lands, buildings, or other structures, in certain cases. These statutes are R. S. sec. 3315, as amended by ch. 312, Laws of 1885, and ch. 535, Laws of 1887. It is maintained that the amendment of 1887 so changes the law that the subcontractor or his employee is entitled to a lien upon the building or structure, and the land upon which it is erected, for materials furnished or labor performed by him for the principal contractor in the erection of such building or structure, to the full extent of the whole unpaid contract price agreed to be paid the principal contractor, whether

he has fulfilled his contract or not. Thus, in this case the contract price for the whole job was $1,250, but after the owner of the property had paid the principal contractors $700 thereon, and when it required an expenditure of more than $550 to complete the job according to the contract, the principal contractors abandoned it, and the owner was compelled to finish the erection of the building at his own expense. Yet it is claimed that under ch. 535, Laws of 1887, the owner of the building and premises is liable to the subcontractor, the plaintiff, to the amount of his account against the principal contractor for the lumber and materials used in the building up to $550. Whether this is or is not a correct construction of the statute is the only question to be determined on this appeal.

Sec. 3315, R. S., as amended by ch. 312, Laws of 1885, after giving in general terms a lien in the cases mentioned in sec. 3314, R. S., to any subcontractor or employee of any contractor or subcontractor, and prescribing the proceedings to enforce such lien, contained the following restrictions upon the right to such lien: *First*, "the claim of such subcontractor or employee shall not constitute such lien, except so far as such owners shall, at the time of giving such notice, be, or shall thereafter become, indebted to such principal contractor for work done or materials furnished under the principal contract;" *second*, "in no case shall the owner be compelled to pay a greater sum for or on account of such house, building, or other improvement than the price or sum stipulated in the original contract or agreement." A proviso contained in the statute is immaterial here.

Ch. 535, Laws of 1887, extends the right of lien theretofore conferred by law upon some classes of persons to other classes. It retains all the essential provisions of sec. 3315, R. S., as amended by the act of 1885, except the first restriction above quoted. The argument of the learned

counsel for plaintiff in support of the ruling of the court
enforcing the lien claimed is founded entirely upon the
omission from the statute, or rather the repeal, of such first
restriction.

In *Mallory v. La Crosse Abattoir Co.* 80 Wis. 170, this
court sustained the validity of ch. 333, Laws of 1889, which
repeals the remaining restriction above quoted, and charges
the property of the owner with a lien of the subcontractor
or employee for the amount due him from the principal
contractor, without regard to the contract price for the
building or improvement, or the sum the owner may be in-
debted to the principal contractor when notice of the lien
claim is served upon him, or at any other time, or when the
same may be payable by the terms of the original contract.
See, also, *Hall v. Banks*, 79 Wis. 229. Mr. Justice ORTON
took no part in the decision reported in 80 Wis., having
been ill when it was made, and Mr. Justice CASSODAY dis-
sented therefrom. The majority of the members of the
court felt bound by its former adjudications to uphold the
act of 1889, but each of them fully appreciated the ethical
objections thereto urged by Mr. Justice CASSODAY in his
dissenting opinion. It must be conceded that the law of
1889 is a harsh one, and will frequently operate unjustly
against owners who improve their real estate, as it did in
the case last referred to. Its tendency must necessarily be
to discourage such improvements, and it would seem that
by its enactment the legislature has established an objec-
tionable public policy. The majority of the court, being
unable to find any sufficient constitutional objection to it,
were constrained to hold it a valid law. The court is not now
disposed to overrule that decision. Probably it comes
fairly within the rule *stare decisis*. But, however that may
be, we think the statute of 1887 should not be construed to
force the owner to pay for his improvement more than he
agreed to pay therefor, in order to save his property from

liens for debts of the principal contractor which he never agreed to pay, and beyond the amount he agreed to pay such principal contractor. Even a strict construction of the statute should be resorted to, if necessary, to protect the owner from such wrong and injustice.

The first restriction upon the right of a subcontractor to a lien, quoted above, seems to have been inserted in the statute to save the owner from being compelled, in order to protect his property, to pay a subcontractor any sooner than by the terms of the original contract such owner was bound to pay the principal contractor. The repeal of that restriction by the act of 1887 probably broke down that barrier, and rendered the owner liable to pay the subcontractor as fast as the principal contractor earned the contract price, although, as between such owner and principal contractor, the same may not have been due. But in the act of 1887 the restriction was retained that "in no case shall the owner be compelled to pay a greater sum for or on account of such house, building, or other improvement than the price or sum stipulated in the original contract."

The question is, What is the meaning of the expression, "the price or sum stipulated in the original contract"? As applied to this case, does it mean, as the circuit court held, that the subcontractor is entitled absolutely to a lien on the property in question to the amount of $550, because the principal contractors were paid only $700, and the contract price was $1,250, regardless of the fact that the principal contractors abandoned the job when they had performed their contract only to the extent of less than $700? Or does it mean that the lien of the subcontractor shall be restricted to the unpaid contract price of the work actually performed by the principal contractors? If the last question be resolved in the affirmative, the plaintiff is not entitled to the lien claimed, for the principal contractors were paid more than they earned under their contract, be-

fore the owner had notice of the plaintiff's claim. We think the question should be affirmatively answered. This construction of the statute does no violence to its language, and is so eminently reasonable and just that we do not hesitate to adopt it.

We hold, therefore, that the term, "the price or sum stipulated in the original contract," as employed in the act of 1887, does not mean the price or sum stipulated therein for a full performance of their contract by the principal contractors, unless they fully performed the same; but in case of partial nonperformance by them the term means the proportionate contract price or sum for the part performed, and restricts the lien of the subcontractor to the unpaid balance of that sum. It follows that the plaintiff was not entitled to enforce any lien upon the property of the defendant *Henry Pohls* for his demand against the defendants Opperman & Baalke, the principal contractors.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to that court to dismiss the complaint.