## Carl F. Julin v. The Ristow Poths Manufacturing Company.

1.   CROSS-BILL—*In Mechanics' Lien Proceedings.*—It is not necessary for a defendant in a proceeding for a mechanics' lien to file a cross-bill asking for affirmative relief in setting off his damages sustained for non-completion of the contract.

2.   LIEN—*Extent of Sub-Contractor's.*—The statute does not permit a lien in favor of a sub-contractor, except to the extent of the owner's indebtedness to the original contractor at the time of giving notice.

3.   SUB-CONTRACTOR—*Rights Depend on the Original Contract.*—The right of a sub-contractor to a lien is subject to the original contract; so held where the contract contained a clause providing for the allowance of ten dollars per day as liquidated damages for each day during which the building should be delayed after the date stipulated for the full completion of the job.

4.   SAME—*Fund Out of Which He is to be Paid.*—The original contractor is the real debtor to the sub-contractor, and the amount due to him from the party for whom the work is done, is the only fund out of which the sub-contractor can be paid.

5.   MASTER IN CHANCERY—*Exceptions to Report.*—Exceptions to a master's report are to be confined to such objections as are allowed or overruled by him.

6.   MASTER'S REPORT—*Exceptions by Persons Not Parties.*—If a person not a party to the suit is interested in a master's report and is dissatisfied with it, he must leave objections to the draft as a preliminary step to putting himself in a situation to take exceptions.

7. Same—*Exceptions When it is to be Made the Foundation of a Decree.*—As to all references to a master, of such a nature that his report is to be made the foundation of a further decree or decretal order, no party is at liberty, without a special order, to except to the report, or present a petition in the nature of an exception thereto, unless he has, previously to the signing of the report, carried in objections, in writing, to the draft report, specifying the points in which he considers it to be wrong.

8. Practice in Equity—*Revision of the Rulings of the Master.*—The mode of procedure requires a party, who may desire to have the court revise the rulings of the master as to the admission or rejection of evidence, or the principle upon which an account is stated, to file objections to the report before it is returned into court, pointing out the grounds with reasonable certainty.

9. Same—*Exception to Allowance of Claims—Objections Waived.*—The exception to the allowance of a claim must be taken before and disallowed by the master; until such an exception is so taken and disallowed, the parties can not be heard in the trial court. Failing to take such exceptions before the master the objection will be regarded as waived.

**Memorandum.**—Proceeding to enforce sub-contractor's lien. Appeal from the Circuit Court of Cook County; the Hon. Samuel P. McConnell, Judge, presiding. Heard in this court at the March term, 1894. Reversed with directions. Opinion filed June 18, 1894.

## Statement of the Case.

This is a petition for a mechanic's lien, filed by the appellee as a sub-contractor, against Charles Oberg, the original contractor, and Carl F. Julin, the owner of the property, for millwork furnished under a sub-contract. Oberg was defaulted and Julin filed his answer setting forth that at the time of serving the sub-contractor's notice upon him, on January 4, 1892, there was due Oberg, the original contractor, only $182.32, this being the balance after deducting the damages to which Julin claimed he was entitled on account of the delay in the completion of the original contract. The case was referred to a master, who reported in favor of a lien for $620, allowing Julin $213 damages. Both parties excepted to the report. The court sustained the exceptions of appellee, overruled those of Julin, and decreed a lien for $971.58, as prayed for in the petition. Julin took an appeal.

C. E. CRUIKSHANK and FRED H. ATWOOD, attorneys for appellant

VOCKE & HEALY, attorneys for appellee.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This was a petition by the appellee, for a sub-contractor's lien, for furnishing the millwork used in the construction of a house contracted to be built for the appellant by one Charles Oberg. The sub-contract price was $950, and some extra work was done which increased the total claim of the appellee, the sub-contractor, to $971.58.

The original contract between appellant and the contractor Oberg provided for the allowance of $10 per day as liquidated damages for each day during which the building should be delayed after the date stipulated for the full completion of the job. The date provided for the completion of the building was October 20, 1891, but the building was not in fact completed until December 1st, and in some minor and unimportant particulars, not until December 24, 1891.

There appears to be no serious defense to the claim of appellee, except on the ground that there was nothing, or at least but an amount very much smaller than was found in the decree, due from appellant to Oberg, the original contractor, at the time of serving the lien notice. Such a result is reached by crediting appellant with damages at the stipulated rate of $10 per day for a greater or less number of days' delay in the completion of the building from and after October 20, 1891.

The master to whom the cause was referred to take proofs and report his conclusions both upon the law and the evidence, found that there remained in the hands of the appellant at the time appellee gave notice of his lien, the sum of $833 of the contract price to be paid to the original contractor, after deducting all payments.

He also found that the building was completed on December 1, 1891, and that its rental value from October 20th to

December 1, 1891, a period of forty-one days, was $213, and he allowed that sum to the appellant as the actual damages to him, occasioned by the delay, and rejected his claim to be allowed damages at the stipulated rate of $10 per day.

Upon such findings the master recommended that a decree be entered in appellee's favor for the sum of $620, which was the difference between the balance so found to be remaining in the hands of the appellant at the time of service of the lien notice, and the amount of damages found to have been occasioned to appellant from delay, on the basis of rental value of the premises.

Neither party was satisfied with the report of the master, and both parties filed exceptions in the Circuit Court to the report.

Without hearing any evidence that was not before the master, the Circuit Court sustained the exceptions of the appellee and overruled those of the appellant, and entered a decree giving appellee a lien for the full amount of $971.58, claimed by the appellee, and disregarding all claims of appellant for damages.

The appellee, in urging that the decree be sustained, contends that it is consistent with the facts, and that to entitle appellant to an allowance for damages he should have filed a cross-bill asking for affirmative relief in setting off his damages against the fund in his hands belonging to the original contractor.

Considering the last proposition first, we are of opinion that a cross-bill was not necessary.

The statute does not permit a lien in favor of a sub-contractor except to the extent of the owner's indebtedness to the original contractor at the time of giving notice.

The amount of such indebtedness is just as much a matter of defense when it is to be determined from the amount of damages sustained by reason of the default of the original contractor, as when it is to be ascertained by the amount of payments rightfully made to him, and a cross-bill is no more necessary or appropriate in the one case than the other.

Upon what theory or principle the Circuit Court rejected the allowance of damages by the master does not appear. If it were upon the theory that there was an independent contract between appellee and appellant, it is sufficient to say that neither the petition nor the decree proceed upon that theory. Both proceed upon the theory of a sub-contract.

The objectionable practice was pursued of allowing exceptions to the master's report to be considered by the Circuit Court when no objections to the report had been previously presented to the master.

"Exceptions are always to be confined to objections allowed or overruled by the master." 2 Daniell's Ch. Pl. and Pr. 1302, note 4.

"If a person interested in the report, though not a party to the suit, is dissatisfied with it, he must leave objections to the draft as a preliminary step to putting himself in a situation to take exceptions." Ibid. 1303.

"As to all references to a master, of such a nature that his report thereupon is to be made the foundation of a further decree or decretal order, no party is at liberty, without a special order, to except to the report, or present a petition in the nature of an exception thereto, unless he has, previously to the master signing the report, carried in objections, in writing, to the draft report, specifying the points in which he considers the report to be wrong." Ibid. 1302.

"Consistently with the convenience of courts of equity in this respect, their mode of procedure requires the party who may desire to have the court revise the rulings of the master as to the admission or rejection of evidence, or the principle upon which an account is stated, to file objections to the master's report before it is returned into court, pointing out the grounds with reasonable certainty." Hurd v. Goodrich, 59 Ill. 450; Prince v. Cutler, 69 Ill. 267.

"The exception to the allowance of the claim of appellant should have been taken before and disallowed by the master; (and) until such an exception is thus taken and disallowed, the parties can not be heard on exceptions in the Circuit

Court, * * * and failing to take exception before the master, the objection should be regarded as waived." Pennell v. Lamar Ins. Co., 73 Ill. 303; Jewell v. Rock River Paper Co., 101 Ill. 57.

There was no evidence heard by the court that was not heard by the master. The certificate of evidence brought here recites that all the evidence set forth in the master's report, which was made a part of the record, was offered and read upon the hearing of the exceptions to the report, and in order to determine the correctness of the report, although there were no objections presented to the master, we have followed the bad example set by the Circuit Court, and read the evidence, with no intention, however, of establishing a precedent to be hereafter followed.

From such examination it seems very clear to us that the master found correctly that there remained in the hands of appellant at the time the notice was served upon him, and at the date of the filing by the appellee with the clerk of the Circuit Court, of the statement of account, no more than the sum of $833, due to the original contractor. And the statute is too plain to admit of construction or argument, that the sub-contractor can have no decree for an amount in excess of that due from the owner to the original contractor.

The decree, therefore, in any event, should not have been for so much as $971.58.

But it is without substantial contradiction that there was a delay, in completing the building, of at least forty-one days.

If this delay were without the fault of appellant, and there is no evidence that he was at all in fault in the matter, he was entitled by the terms of his contract with Oberg, the original contractor, to damages for the delay.

Whether it were material or not, as a matter of law, that the appellee had notice of the time clause in the contract of the original contractor, need not be discussed, although it is the law that the right of a sub-contractor to a lien depends upon that contract. Welch v. Sherer, 93 Ill. 64.

There was conflicting evidence as to that fact, and the master's conclusions, for anything that appears, should not

have been in that regard overruled, when there was evidence tending strongly to establish the existence of such a state of facts as did rightfully require an allowance out of the funds remaining in appellant's hands of the damages suffered by him.

" The findings of a master in matters referred to him in regard to the facts established by the testimony, is as conclusive upon the parties as the verdict of a jury in a civil cause, and will be reviewed or set aside only for the same reasons that a verdict would be. Where there is evidence tending to establish the facts found, neither the Court of Chancery nor the Supreme Court on appeal, will review the findings in regard to the weight to be given to the testimony." Howard v. Scott, 50 Vt. 48; Forest Glen, B. & T. Co. v. Gade, No. 4868, this term. Not reported.

The master allowed damages at the rate of the rental value of the building for the time of the delay instead of at the rate specified as liquidated damages. The stipulated damages were ten dollars per day; the rental value found was a trifle less than five dollars and a half per day.

Undoubtedly, the master excluded the stipulated damages on the ground that they were so far in excess of the rental value, as to be penal and unconscionable.

In the recent case of Poppers v. Meagher, 148 Ill. 192, it was held that a stipulation to pay, as liquidated damages, the sum of thirty dollars per day for the time that possession of premises should be withheld after the expiration of the term of a lease, under which the monthly rental was $500, it being proved that for the time of withholding possession, the rental value was at the rate of $7,000 a year, was not unconscionable, but was reasonable. In that case, the stipulated damages exceeded the rental value about fifty-six per cent, while in this case, they were about eighty per cent in excess.

Whether the difference of twenty-four per cent would change the damages from such as were reasonable to such as were unconscionable, is a subject of curious inquiry rather than of practical value in this case, for the master

erred, if it were error, on the safe side, and allowed only actual damages.

It is, we think, plain from the evidence that the master had reasonable grounds for coming to the conclusion that the appellant was entitled to damages, and that there were not sufficient grounds to meet the rule applicable to master's findings, for overruling his report in that regard.

The appellant claimed much larger damages, but for the reasons already stated against disturbing the findings of a master, and the other reason, also before stated, that neither party objected before the master to his findings, we need not further consider his reasons for a greater allowance.

The record shows that the master gave notice to the parties on September 26, 1893, that his report was prepared and that they might have until October 2, 1893, in which to examine the same and file objections thereto; that he filed his report, with the evidence, in the Circuit Court on October 24, 1893, and that on the last named day for the first time, anywhere, there were exceptions to his report filed by both parties in the Circuit Court. There is no indication anywhere that objections by either party were ever presented to the master or considered by him, and such omission is not shown to have resulted from mistake or surprise. Prince v. Cutter, *supra.*

Upon the authority of the cases cited, and many others that can be found by reference to the text books, the correct practice would have been to have overruled the exceptions of both parties, so for the first time filed, and to have confirmed the master's report for want of objections having been presented to and considered by him. But, also, upon the merits, the report should have been confirmed.

The decree was further defective in not finding any amount to be due from the appellant to the original contractor. Culver v. Elwell, 73 Ill. 536; Douglas v. McCord, 12 Ill. App. 278.

Oberg, the original contractor, was the real debtor to appellee, and what was due to him from the appellant, was the fund out of which the appellee, the sub-contractor, was to be

paid, and was the only fund. It is indispensable that there should be a finding and a decree against both the owner and the original contractor. Culver v. Elwell, *supra.*

The statute in that regard is the same now, as when that decision was rendered. Gross' Stat., Chap. 65, Sec. 37; Hurd's Stat. 1891, Chap. 82, Sec. 45.

For the errors indicated, the decree of the Circuit Court will be reversed with directions to enter a decree in accordance with the findings of the master's report. *Reversed with directions.*