No. 28,784.

THE H. B. McCRAY .LUMBER COMPANY, *Appellee,* v. H. B. TERRY and GEORGE H. MATNEY, *Appellants.*

(278 Pac. 746.)

Opinion filed July 6, 1929.

*Louis R. Gates* and *Rush L. Fisette,* both of Kansas City, for the appellants.
*A. L. Berger* and *Jerome S. Koehler,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to foreclose a subcontractor's mechanic's lien. Plaintiff recovered judgment against Terry, the contractor, for the price of lumber sold and delivered to. Terry which Terry used in building a house for Matney, and recovered judgment

against Matney for foreclosure of mechanic's lien. Both defendants appeal.

The contract between Terry and Matney was in writing, and was dated September 30, 1925. Apparently the date should have been September 29, but the mistake is not material. The contract provided that Terry would furnish material and labor to build and complete a house according to annexed plans and specifications, and contained the following recital:

"For the faithful performance of the above, the party of the second part [Matney] agrees to pay to the party of the first part [Terry] the sum of four thousand five hundred ($4,500)—$2,000 at the signing of this contract, . . ."

Matney gave Terry a check for the cash payment of $2,000, receipt of which was acknowledged in the contract. The check was presented and paid, and for a portion of the amount Terry took a cashier's check for $1,000, dated September 29, 1925, and payable to his order. Terry was already indebted to the lumber company in a sum in excess of $1,000 for lumber previously purchased, and on the day he received the cashier's check he indorsed it and delivered it to the lumber company. The lumber company applied the check on Terry's existing indebtedness. Construction of Matney's house was not begun until the latter part of October. The first material was furnished on October 21.

A jury was impaneled. The petition contained an itemized account of the material sold to Terry for the Matney house, the answer was unverified, and as the trial proceeded defendants admitted the account was correct. On further consideration of the case the court discharged the jury, and on the pleadings and the evidence found the lumber company was entitled to recover from the contractor the balance due on the account, with interest.

Terry's answer said H. B. McCray, president of the lumber company, knowing Terry's embarrassed financial condition, persuaded and induced Terry to advance to the lumber company $1,000 of the Matney money, which McCray knew was paid to Terry to buy lumber for Matney's house—

"Telling this defendant that when this defendant realized on the building he was constructing at 1400 South Twenty-sixth street, Argentine, Kan., as aforesaid, he could replace the $1,000 to the Matney fund that he had advanced to the McCray Lumber Company, as requested to relieve the strain of said McCray Lumber Company, which it was represented at said time by said H. B. McCray was pressed for money."

The building contract was introduced in evidence. It disclosed that the $2,000, part of which Terry used in purchasing the cashier's check, was not given "to buy lumber." The purpose for which the check was given was stated in the contract. It was given generally for performance of the contract, and the court properly declined to permit a condition to be attached to the contract by parol evidence which would limit the use the contractor could make of the money, and which would follow the money into the hands of any creditor of the contractor who had notice of the source from which it was derived.

It will be observed the answer did not assert that Terry loaned $1,000 to the lumber company. The lumber company was not to replace the money. Terry was to replace the money in his "Matney fund" when he realized on another contract. The answer did not assert that there was any agreement between Terry and McCray to make future application of the money to indebtedness which might arise on account of future purchase of material for the Matney house. Of course the answer did not assert that Terry directed application of the cashier's check when he delivered it, and his attorneys admitted at the trial he gave no direction as to how it should be applied. The result was that, so far as the answer was concerned, the lumber company was at liberty to apply the check on Terry's existing indebtedness.

Terry was permitted to tell about delivery of the cashier's check to the lumber company. In some of his testimony he enlarged on his answer. He said he loaned the $1,000 to McCray; he gave Mc-Cray the money as a friend; he let McCray have $1,000 to relieve him temporarily, "and apply it further on." In other portions of his testimony Terry acknowledged he paid the $1,000 on lumber he had purchased from the lumber company:

"Q. Now, then, on the same date that you got this check from Mr. Matney, September 30, 1925— A. Yes, sir.

"Q. You then paid to the McCray Lumber Company $1,000 on lumber you had bought from them; A. Yes.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q. That is the cashier's check you delivered to the H. B. McCray Lumber Company? A. I delivered to them, evidently, it is signed by me.

"Q. That went to pay for some lumber you owed them? A. Evidently."

Terry also said he was under the impression that when McCray got the cashier's check he applied it on a certain bill amounting to

more than $800, and he said the cashier's check did not pay all the bills he owed the lumber company. It was the province of the trial court to deal with testimony of this character, and on the pleadings and the evidence the trial court sustained the lien for the full amount claimed.

Terry's answer contained the following:

"That as a condition precedent to defendant advancing the $1,000 of the Matney money, H. B. McCray promised this defendant that in any event the McCray Lumber Company, plaintiff herein, would take care of this defendant, which this defendant understood to mean that if he was unable to realize his funds, tied up, in the building located at 1400 South Twenty-sixth street, Argentine, Kansas, so that he could replace the $1,000 from the Matney fund and advanced to H. B. McCray Lumber Company and credited on other accounts that this defendant owed said plaintiff, that no liens would be claimed or filed against the property of George H. Matney, . . ."

The court properly held the answer did not plead any agreement of the lumber company with Terry or for Matney's benefit not to file a lien on the house which Terry contemplated building in the future for Matney. Before any evidence was introduced, the court indicated that an agreement to waive lien would be of consequence, but no proof tending to show such an agreement was offered.

Matney's answer to the petition was that, to enable Terry to pay cash for lumber to be used in building Matney's house, Matney advanced $2,000 to Terry. The answer further stated that Matney was informed by Terry and was told in the presence of McCray that the lumber company received $1,000 of the money, knowing it was advanced by Matney, and knowing the purpose for which it was to be used.

Matney was allowed to testify concerning his negotiations with Terry resulting in execution of the contract and payment to Terry of $2,000. When asked if McCray was present when the conversation occurred, Matney said McCray never heard of it. The testimony follows:

"A. He told me, if I would give him $2,000 right there, he would go ahead and buy the material for me and have it on the job and everything ready to build the house. And he said if I would give him that $2,000 he would go buy the lumber for me and get the material on the ground and buy as he went along. . . .

"Q. Was there anything said with reference to buying lumber cheaper by paying cash? A. Yes, that is what he said; you let me have $2,000, and I can go ahead with cash, and I can go and buy lumber cheaper than I can on

credit. He would get a reduction or something, I don't know how it was. Anyway, I went to work and made out a check for the $2,000, so that I could get my house started. . . . "

The court ruled it would be governed by the terms of the building contract. The contract was an ordinary building contract, and parol evidence was not admissible to change it into one of agency on the part of Terry to buy lumber for Matney, or to change it in any other respect. Matney chose to pay $2,000 on the contract when it was signed, and the payment was at his own risk, so far as subsequent subcontractors were concerned. (R. S. 60-1403.)

There are two typographical errors in the section just cited, which should read:

"*Provided,* That the owner of any land affected by such lien shall not thereby become liable to any claimant for a greater amount than he contracted to pay the original contractor; but the risk of all payments made to the original contractor shall be upon such owner until the expiration of the sixty days hereinbefore specified, . . . " (R. S. 60-1403.)

The sixty days' time referred to is the period mentioned earlier in the section within which lien may be filed after the last date on which material was furnished.

The very purpose of the statute was to prevent the cutting off of subcontractors' liens by early payments to the contractor. (*Shellabarger & Leidigh v. Thayer*, 15 Kan. 619. Payment of $800 when contract was signed on contract price of $1,300.) In this instance Terry could have applied the cashier's check on his existing indebtedness. Not having done so, the lumber company was privileged to apply it and, under the plain letter of the statute, it was not material that the lumber company knew the source from which the money was derived. It was Terry's money, and Matney's predicament results from the fact he did not require Terry to give bond.

Defendants stated they desired to make some offers of proof. The court said the offers were in the answers, they would be considered as in the record, and they were rejected. The ruling was sound, because when the building contract was introduced in evidence, the case was ripe for judgment on that evidence and the pleadings.

Terry complains because judgment was rendered against him on his unverified answer and his admission that the itemized account was correct. The contention is he was not precluded from making

defenses to the account, even though it were correct. As indicated, he had no defense provable under his answer.

Defendants answered the petition, went to trial on their answers, made no application to amend, and were defeated. In Terry's affidavit in support of his motion for new trial he proposed a new defense—agreement by the lumber company to waive lien. He also proposed a set-off—discounts on purchases of lumber from the lumber company extending over a period of years, which on an accounting would amount to more than $700. Matney made an affidavit in support of his motion for new trial that although he had used all possible diligence to discover the evidence, he had just found out about Terry's set-off. The motions for new trial were properly denied.

The judgment of the district court is affirmed.