Abraham N. Geller, J.
The parties to this action to foreclose mechanics’ liens stipulated to waive findings and to try first the primary issue of the owner’s liability or, stated in other words, whether there was a fund consisting of moneys due and unpaid under the contract for the improvement available for lienors. The question of the validity and amount of the respective liens was reserved pending such determination.
The sole witness on this issue for the lienors was the general contractor. His testimony was as to certain subjects vague and generalized, the explanation being that records were not available because an assignment for the benefit of creditors had been executed before the contract had been completed. For some time prior thereto the contractor had practically ceased working on this job and thus there was an abandonment of the contract without just cause. It is evident that this contract was an unprofitable one. The owner then undertook to complete the improvement under the contract.
The basic rule as to an owner’s liability for mechanics’ liens is that, except in cases of fraud or collusion or evasion of the provisions of the Lien Law, an owner cannot be compelled to pay any greater sum for the completion of a building than by his contract he has agreed to pay (Crane v. Genin, 60 N. Y. 127, 131; Lien Law, §§ 4, 7).
Thus, where the general contractor abandons or otherwise breaches his contract, and the owner assumes completion himself under the contract, the fund, if any, available to lienors consists of the contract price plus agreed extras, if any, less what the owner has already paid for the improvement, against which is credited the actual cost of completion by the owner, provided same is fair and reasonable.
Here, there is no dispute concerning payments made direct to the general contractor totaling $16,977. But the lienors do oppose vigorously crediting the owner with payments demanded by various subcontractors and materialmen totaling $13,227 made by the owner in the period before the abandonment in order to expedite the work and only after obtaining the general contractor’s authorization therefor. While such payments *734 were for actual work done or materials furnished, they may be said to constitute advance payments under the terms of the contract. The lienors urge the applicability of sections 7 and 15 of the Lien Law.
Section 7 provides that advance payments made ‘ ‘ for the purpose of avoiding the provisions ” of the Lien Law shall be of no effect as against liens created before such payment actually became due by the terms of the contract. The mere fact that payments have been advanced or that at such times the owner has knowledge that the contractor is indebted to various subcontractors or materialmen, is not enough to debar the owner from claiming credit therefor. Advance payments made in good faith to expedite the work or because the contractor is in financial difficulties or for other legitimate reasons may be credited to the owner (Glens Falls Portland Cement Co. v. Schenectady County Coal Co., 163 App. Div. 757; Maycumber v. Wolfe, 10 Misc 2d 464; Walsh v. Boulder Apts., 191 N. Y. S. 2d 503).
The evidence discloses that all of the questioned payments were made prior to the filing of any notice of mechanics’ liens and were given in good faith under the exigencies of the situation in payment of actual work done and materials furnished.
Section 15 requires the prompt filing of assignments of contracts or of money due or to become due thereunder and of orders drawn by a contractor upon the owner for payment of such money before they shall operate to reduce the lien of a subcontractor or materialman. The lienors contend that the arrangement here made, whereby the owner obtained the contractor’s authorization to make the questioned payments, constitutes orders upon the owner for payment within the purview of section 15 and, not having been filed, cannot operate to reduce their liens.
This interpretation loses sight of the fact that we are here dealing with payments actually made and not with the effect of an assignment or order as such. In Harvey v. Brewer (178 N. Y. 5) the court held that this section was applicable only to an assignment or order and in nowise affected payments made by the owner on account of labor performed or materials furnished under the contract. In American Clay & Cement Corp. v. Rochester Folding Box Co. (171 N. Y. S. 720) the court construed a certain offset agreement as constituting a ‘ ‘ payment ’ ’ and not an ‘1 assignment or order, ’ ’ which would be required to be filed under this section. In any event, lienors cannot object to payment made under a valid assignment or *735 order prior to the consummation of their liens by the filing of notice of lien (Rubenstein v. Jamaica Nat. Bank, 40 N. Y. S. 2d 23, affd. 266 App. Div. 977, affd. 294 N. Y. 727).
As to the matter of the owner’s cost of completion, the court has allowed the estimated reasonable cost of a few items still required to be furnished and done to finish the job in accordance with the plans and specifications. As to these unfinished items the court accepted the general contractor’s own estimates.
Although there is some confusing language in various decisions regarding the owner’s right to recover for unfinished work (see, e.g., Clark v. Fleischmann Vehicle Co., 187 N. Y. S. 807, 814), there is no reason for distinguishing between the actual cost necessarily expended by the owner in completing the job and the reasonable cost of the uncompleted work, except in the nature of the proof and the kind of testimony to be required by the court. In Comey v. United Sur. Co. (217 N. Y. 268, 276-277), Judge Cabdozo stated the rule applicable to an owner’s damages for an abandonment of a contract: “If he had not completed it, he would still have been entitled to his damages (Kidd v. McCormick, 83 N. Y. 391, 397). The fact that he did complete it makes the proof of his damages more certain. It supplies evidence of his loss which might otherwise have depended upon the estimates of experts. It has no other importance.”
Concerning the owner’s claim for credit in the amount of liquidated damages provided in the contract by reason of the general contractor’s delay in performance, the court has not allowed same. No reported case dealing with the subject in this context has been cited to or found by the court. While such claim might be asserted under appropriate conditions against the persons so agreeing, it seems to me that it should not be permitted to diminish or extinguish the amount of liens provided by law for the protection of subcontractors and materialmen, whose labor and material have gone into the construction.
The construction contract between the owner and the general contractor was for $55,000. To this should be added an agreed extra of $750 for a sewer connection. However, as indicated by the general contractor, there were certain items of allowance to be deducted from the contract price, totaling $1,559.10. Accordingly, the net price for the job was $54,190.90.
The owner concededly paid $16,977 directly to the general contractor. As hereinbefore mentioned, the owner prior to the abandonment of the contract paid a total of $13,227 directly on account of work performed and material furnished. On *736 June 27, 1960, when the general contractor ceased working on the job, there was still due to be paid under the contract for work to be performed the sum of $23,986.90 computed by deducting from the aforesaid sum of $54,190.90 the total of the aforesaid sums of $16,977 and $13,227 or $30,204.
Although the owner expended a substantially larger sum in an endeavor to complete the job, I allow and find that he is entitled as credit therefor only the sum of $22,048.32 as being the fair and reasonable value of the materials supplied and work performed. In addition thereto the owner, although claiming larger amounts, is entitled to certain allowances for work still unperformed and provided in the plans and specifications. The fair and reasonable sum therefor is $2,225.
The resultant total for owner’s cost of completion is $24,273.32 which exceeds the afore-mentioned sum of $23,986.90. Thus, there is no liability on the part of the owner to these lienors and no fund available for payment of their liens.
The complaint and counterclaims of the respective parties are therefore dismissed on the merits, but without costs and disbursements.